| H.B., as lawful guardian *ad litem* of C.B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE BOARD OF EDUCATION, | ) |
| NORTH CAROLINA DEPARTMENT OF | ) |
| PUBLIC INSTRUCTION, EASTERN | ) |
| NORTH CAROLINA SCHOOL FOR THE | ) |
| DEAF, CARTER BEARDEN, PAUL | ) |
| BRIDGES, JET JONES, and JOHN DOES | ) |
| 1-5, | ) |
| Defendants. | ) |

**ORDER**

This cause comes before the Court on defendants' motions to dismiss. Plaintiff has

responded, defendants have replied, and the matters are ripe for ruling. For the reasons discussed

below, the motions are granted in part and denied in part.

## BACKGROUND

Plaintiff alleges the following facts in the complaint. C.B. is a thirteen year old deaf

child who was enrolled at the Eastern North Carolina School for the Deaf (ENCSD or School) in

Wilson, North Carolina, beginning in the second grade. C.B. was bullied at School by another

student, S.D., verbally, physically, and emotionally. ENCSD was aware of S.D.'s treatment of

C.B. as well as of the sexual abuse that S.D. had suffered at his own home. After C.B. was

physically attacked by S.D. at school, C.B.'s parents, M.B. and H.B., requested that School

personnel separate C.B. and S.D. when possible and take steps to closely monitor their

interactions. Defendant Bearden, director of ENCSD, assured C.B.'s parents that the appropriate steps would be taken.

Prior to the fall of 2013, C.B. attended ENCSD as a day student, returning home after school each day. In October of 2013, C.B.'s parents elected to enroll C.B. as a residential student at the School due in part to travel difficulties related to H.B.'s chemotherapy treatments. Prior to making this decision, M.B. and H.B. met with defendant Bridges, whom they believed to be in charge of the residential program, to express their concerns regarding S.D.'s bullying of C.B. Defendant Bridges assured M.B. and H.B. that S.D. and C.B. would be separated whenever possible. In reliance on the assurances M.B. and H.B. received, C.B. was subsequently enrolled as a residential student, meaning he would spend five nights per week (Sunday through Thursday) in a dormitory at School.

On C.B.'s first night in the dormitory, Sunday October 27, 2013, C.B. was assigned by a Doe defendant to a bed in the same room with S.D. C.B. requested to be moved to a different room but his request was not granted. On Monday, October 28, 2013, S.D. repeatedly raped C.B. and another student in the room, threatening to kill them if they left the room to seek help. The following morning, C.B. attempted to report the incident to the morning supervisor, another Doe defendant. This Doe defendant interrupted C.B. and told him to get ready for class. Later that morning, C.B. reported the rape to defendant Jones, the School's social worker/counselor. Defendant Jones sent C.B. back to class. On October 29, 2013, C.B. told the night supervisor on duty, another Doe defendant, that he had been assaulted by S.D. the night before, to which the Doe defendant responded that he did not care.

Though C.B. attempted to call his parents to report the incident, he was not provided with an interpreter and was unable to communicate effectively with them. C.B. was only able to his

2

parents what happened when he arrived home the afternoon of Friday, November 1, 2013. C.B.'s parents took him to the emergency room where physicians confirmed that C.B. had experienced the trauma he described.

C.B. did not return to ENCSD. After attempting to home-school him, M.B. and H.B. enrolled C.B. in Pitt County Schools in early 2014, where he struggles academically, requires a full-time interpreter, and remains isolated from other students. S.D. remained at ENCSD after the incident; he was later arrested and pleaded guilty to sexually assaulting C.B.

The complaint further alleges that that ENCSD did not provide C.B. with medical care after he reported the incident, that it did not report the incident to C.B.'s parents until Friday, November 1, 2013, after C.B. had left school grounds and was on the bus home, that a report was not made to the Wilson Police Department until Wednesday, October 30th at 3:15 p.m., and that the Department of Social Services was never notified. Plaintiff also alleges that ENCSD failed to conduct its own investigation into the rape and prevented the Wilson Police Department and the Department of Social Services from interviewing C.B.

H.B., as guardian *ad litem* of C.B., filed this action on October 27, 2014, asserting that defendants deprived C.B. of certain rights in violation of 42 U.S.C. § 1983, impaired C.B.'s ability to pursue his education in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. (Title IX), and discriminated against C.B. in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Defendants have filed two motions to dismiss. The first, filed on behalf of the State defendants – the State Board of Education, the North Carolina Department of Public Instruction, the Eastern North Carolina School for the Deaf, and the individual defendants in their official

3

capacities – seeks dismissal under Rules 12(b)(1), (2) and (6) and Rule 17(b) of the Federal Rules of Civil Procedure. The second motion, filed on behalf of the individual defendants in their individual capacities, seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie case showing that personal jurisdiction exists, and a court construes all facts and inference in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A

4

complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I.    Section 1983 claims

Plaintiff alleges three claims related to the violation of his substantive due process rights under the Fourteenth Amendment: against the State entity defendants[1] and defendant Bearden in his individual capacity due to their special relationship (count one), against the State entity defendants and defendants Bearden and Bridges in their individual capacities for a state-created danger (count two), and against the State entity defendants and defendant Bearden in his individual capacity for failure to train (count three).

A. *State defendants*

The State defendants have raised Eleventh Amendment immunity from liability for damages under 42 U.S.C. § 1983. "The Eleventh Amendment bars suit against non-consenting states by private individuals in federal court." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the State itself but also to suits where "one of [the State's] agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State officials sued in their official capacity for damages are also protected by Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003).

---

[1] The State entity defendants are the State Board of Education, the North Carolina Department of Public Instruction, and the Eastern North Carolina School for the Deaf.

Eleventh Amendment immunity may be waived (1) expressly, *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); (2) if the defendants removed an action from a state court with jurisdiction, *Lapides v. Bd. Of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002); or (3) if Congress has exercised its authority under the Fourteenth Amendment to abrogate a states' eleventh amendment immunity. *Seminole Tribe v. Florida*, 517 U.S. 44 (1996). There is no suggestion that any of these three types of waiver apply to the instant case. As such, the Eleventh Amendment renders the State defendants[2] immune from the plaintiff's § 1983 claims for damages.[3]

## B. *Individual capacity defendants*

The Due Process Clause does not transform every tort committed by a state actor into a constitutional violation. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989). "As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. There are exceptions to this general rule, however. When the state has a special relationship with an individual, such as when it holds a person in its custody against the person's will, a duty arises to assume responsibility for the person's safety and well-being. *Id.* at 199-200. The second exception arises when the state itself creates the danger. *Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995). In such an instance, "the absence of a custodial relationship may not be dispositive . . . [because] the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." *Id.*

---

[2] Though not specifically denominated in plaintiff's complaint, insofar as any § 1983 claim is alleged against the individual defendants in their official capacities those claims are barred by the Eleventh Amendment.

[3] Plaintiff seeks only damages and does not seek prospective injunctive relief, thus the doctrine of *Ex Parte Young* is inapplicable. 209 U.S. 123 (1908).

A special relationship does not exist between a school and its students so as to trigger Due Process protections because the student is not in physical custody and is able to care for his basic needs along with parental help. *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) (citing other cases holding same). When a child attends public school, "the state has not assumed total responsibility for the student's care. The student's parents retain the ability to provide for his basic human needs, and the child remains free to seek their help and protection." *Id.* Here, although plaintiff was a residential student when he was assaulted, meaning that his parents no longer had the ability to provide for plaintiff's basic needs while he was at the School, his voluntary placement in ENCSD defeats his ability to demonstrate that a special relationship existed. The Fourth Circuit has held that it is the *involuntary* nature of the placement into state custody which triggers substantive Due Process protections. *Doe ex rel. Johnson v. S. Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) ("when a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing "some responsibility for [the child's] safety and general well-being.") (citation omitted, alteration in original); *see also Pinder*, 54 F.3d at 1175 (custody is the crux of the special relationship rule); *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995) (no special relationship giving rise to constitutional duty to protect where voluntary resident at state school for the deaf sexually molested by classmate).

However, the Court finds that the complaint sufficiently alleges that defendants in this instance created the danger. The complaint alleges that defendants knew that S.D. had physically attacked C.B. in the past, knew that S.D. had been the victim of sexual abuse himself, and knew of C.B.'s parents' concerns regarding C.B.'s enrollment as a residential student and the

7

increased opportunity for contact with S.D. The complaint alleges that despite this awareness and defendants' assurances that steps would be taken to protect C.B. from S.D., defendants knowingly assigned C.B. to S.D.'s dormitory room, where the two would be left together unsupervised for an extended period overnight.

Defendants rely heavily on *Stevenson v. Martin County Board of Education*, 3 Fed. App'x 25 (4th Cir. 2001) (unpublished), to contend that plaintiff's allegations fail to demonstrate that the State created a danger in this instance. The plaintiff in *Stevenson* was a public school student who suffered repeated physical attacks from other students. The attacks culminated in a particularly brutal beating in a classroom, wherein a teacher was also assaulted. The Fourth Circuit affirmed dismissal of Stevenson's Due Process claim, holding that, *inter alia*, the state did not create the danger that Stevenson faced. In so holding, the court relied on the steps the school took to protect Stevenson, namely by suspending the attackers and sending them to a special disciplinary program, and the fact that the "failure to protect by itself is not sufficient to trigger constitutional liability." 3 F. App'x at 32.

In contrast, plaintiff here alleges that the State did more than fail to protect him; plaintiff alleges that the State, either intentionally or with reckless indifference, placed plaintiff in a situation in which it knew that danger could and most likely would arise. Where the State's behavior surpasses a passive failure to act, it may properly be considered to have "directly enabled" the dangerous situation which resulted in injury to the victim. *Robinson v. Lioi*, 536 F. App'x 340, 344 (4th Cir. 2013); *see also Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989) (plaintiff raised triable issue of fact where state actor who did not himself assault plaintiff but "allegedly acted in callous disregard for [plaintiff]'s physical security, a liberty interest

8

protected by the Constitution", thus affirmatively placing plaintiff in danger) (internal quotation and citation omitted).

The Court further finds that the facts sufficiently allege that defendants acted with deliberate indifference by failing to adequately train and supervise School employees to prevent sexual assaults. *See Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1239 (10th Cir. 1999). Plaintiff has alleged that the individual defendants were aware of S.D.'s bullying and harassment of C.B., that defendants had made assurances that the two students would be separated whenever possible, that defendants were aware of S.D.'s own sexual abuse, and that despite their knowledge C.B. was assigned to S.D.'s room, his request to move was not acted upon, and C.B. was repeatedly raped. That S.D. had not *sexually* attacked C.B. prior to the rape incident does not at this stage absolve defendants of an allegation that they failed to properly train employees, amounting to a deliberate indifference to the rights of their students and creating a dangerous environment in which a student suffered injury.

Plaintiff has therefore stated a plausible claim for relief against the individual defendants in their individual capacities under § 1983 in counts two and three of the complaint.

The individuals further assert that they are entitled to qualified immunity on plaintiff's § 1983 claims. The privilege of qualified immunity protects government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-step procedure for determining whether qualified immunity is appropriate which asks first whether a constitutional violation occurred and second whether the right violated was clearly established at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Judges are permitted to exercise their

9

discretion, however, in regard to which of the two prongs should be addressed first in light of the facts and circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants contend that their arguments for dismissal of the § 1983 claims support that whether any of their actions created a danger for plaintiff could not have been well established in the fall of 2013. However, "the right to be free from state-created danger has been clearly established in this circuit." *Robinson,* 536 F. App'x at 346. The lack of a case on all fours with these facts "does not imply that the unlawfulness of the conduct under the Constitution is not apparent." *Pullium v. Ceresini*, 221 F.Supp.2d 600, 605 n.5 (D.Md. 2002). Therefore, at this stage of the proceeding and taking the facts in the complaint as true, the Court declines to find that qualified immunity protects the individual defendants from damages liability.

II.     Title IX claims

Plaintiff brings two claims for violation of the Educational Amendments of 1972 (Title IX) against the State entity defendants for engaging in misconduct and deliberate indifference (counts four and five). The State entity defendants assert that the complaint fails to state a claim upon which relief can be granted.

To allege a claim for sexual harassment under Title IX for student-on-student harassment, a plaintiff must allege that the recipient of federal funding "acts with deliberate indifference to known acts of harassment in its programs or activities" and that the harassment is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). Deliberate indifference is demonstrated where the funding recipient's response or lack of response to harassment is found to be "clearly unreasonable in light of the known circumstances." *Id.* at 648.

10

The allegations in plaintiff's complaint are sufficient to state a plausible claim for relief under Title IX. Plaintiff has alleged that he was the subject of repeated harassment by S.D. and that the School was aware of the harassment. Plaintiff has further alleged that the School failed to respond to his reporting the rape by dismissing his allegations, failing to provide him with medical treatment, and failing to report the incident to the appropriate authorities. Though defendants contend that after C.B. was raped he was eventually moved to a different room, and that by not returning to school C.B. effectively thwarted the School's efforts to remedy the situation, a student need not "be raped twice before [a school is] required to appropriately respond to [] requests for remediation and assistance." *S.S. v. Alexander*, 177 P.3d 724, 741, 143 Wash.App. 75, 110 (Wash.App. Div. 1, 2008).

Plaintiff has further alleged that because of the harassment and rape that he suffered he has been unable to return to ENCSD and has been denied equal access to educational opportunities and benefits. Plaintiff has in essence alleged that his rape by a fellow student, and the resulting inaction by the School, has resulted in a physical deprivation of access to a school uniquely qualified to meet his educational needs. *Davis*, 526 U.S. at 650. Because plaintiff has alleged facts which would plausibly demonstrate each element of a claim under Title IX, the Court declines to dismiss these claims at this stage.

III.     ADA and Rehabilitation Act claims

Finally, plaintiff brings two claims under Title II of the ADA and Section 504 of the Rehabilitation Act. The first is against the State entity defendants (count six) and the second is against the individual defendants in their official and individual capacities (count seven).

Plaintiff concedes that the individual defendants in their individual capacities cannot be held liable for damages under the ADA or Section 504 of the Rehabilitation Act. Accordingly,

11

count seven is dismissed as to the individual defendants in their individual capacities. The State

entity defendants and the individual defendants in their official capacities have not moved to

dismiss the ADA and Rehabilitation Act claims against them (counts six and seven of the

complaint).

## **CONCLUSION**

For the foregoing reasons, the motions to dismiss [DE 20 & 22] are GRANTED IN

PART AND DENIED IN PART. Count one is DISMISSED and count seven is DISMISSED as

to the individual defendants in their individual capacities. Plaintiff's remaining claims may

proceed.

SO ORDERED, this _____ day of May, 2015.

Terence W. Boyle

TERRENCE W. BOYLE

UNITED STATES DISTRICT JUDGE